# Taylor, Appellant, *v.* King.

*Constitutional law — Amendments — Advertising amendment—Mandamus—Secretary of Commonwealth.*

1. If the secretary of the Commonwealth improperly refuses to advertise a proposed constitutional amendment, he may be compelled by mandamus to do so.

*Constitutional law — Amendments—Advertising amendments—Approval of electors.*

2. The Constitution of the State may be legally amended in the way specifically set forth therein, or a new one may be put in force by a convention duly assembled, its action being subject to ratification by the people, but these are the only ways in which the fundamental law can be altered.

3. Although there may be technical error in the manner in which a proposed amendment is adopted or in its advertisement, so that an election may be delayed beyond the time named by the legislature, yet, if followed, unobjected to, by approval of the electors, it becomes a part of the Constitution.

4. Legal complaints to the submission may be made prior to taking the vote, but, if the amendment is once sanctioned, it is embodied therein, and cannot be attacked, either collaterally, or because of any mistake antecedent thereto.

5. Where an amendment relating to the debt of the Commonwealth was duly approved by the electors in 1923, although defective in its manner of submission to the people, no further amendment can be submitted until 1928.

6. Provisions of the Constitution to the effect that amendments may be submitted only at certain times, or at certain elections, are mandatory and must be complied with.

7. Quære as to the propriety of a resolution submitting an amendment containing a proposition to increase the debt for two distinct purposes.

Argued May 25, 1925. Appeal, No. 4, May T., 1926, by plaintiff, from order of C. P. Dauphin Co., Commonwealth Docket, 1925, No. 102, dismissing petition for mandamus, in case of Ray E. Taylor v. Clyde L. King, Secretary of the Commonwealth. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Petition for mandamus. Before HARGEST, P. J.
The opinion of the Supreme Court states the facts.
Petition dismissed. Plaintiff appealed.

*Error assigned* was, inter alia, order, quoting it.

*Mark T. Milnor,* of *Earnest & Milnor,* for appellant.—The secretary of the Commonwealth can be mandamused to publish and submit to the qualified electors of the State for approval or rejection a proposed amendment to the Constitution of the Commonwealth: Com. ex rel. v. Griest, 196 Pa. 396.

A new amendment (not the same one) may be submitted to the electors of the State for approval or rejection oftener than once in five years: Moers v. Reading, 21 Pa. 188; Cronise v. Cronise, 54 Pa. 255.

If the court be of opinion that the Constitution can be amended only after a period of five years elapses after the last amendment, then the time for submission should be computed from the year of the adoption of the last timely amendment: Armstrong v. King, 281 Pa. 207.

Joint resolution No. 2-A of the General Assembly of 1921 proposing an amendment to section 4 of article IX

of the Constitution may be advertised and submitted to the qualified electors of the State for approval or rejection in the year 1925: Com. v. Clark, 7 W. & S. 127; Com. ex rel. v. King, 278 Pa. 280.

The ratification of joint resolution No. 3-A of the General Assembly of 1921 at the election of November, 1923, amended section 4 of article IX of the Constitution so as to permit the general assembly, irrespective of any debt, to authorize the State to issue bonds to the amount of one hundred millions of dollars for the purpose of improving and rebuilding the highways of the Commonwealth, does not now preclude the advertisement and submission to the qualified electors of the State for approval or rejection of joint resolution No. 2-A of the General Assembly of 1921, proposing an amendment to section 4 of article IX of the Constitution: Com. v. Pottsville, 246 Pa. 468.

*Philip S. Moyer,* Deputy Attorney General, with him *George W. Woodruff,* Attorney General, for appellee.— The submission of the proposed amendment to section 4 of article IX of the Constitution at the election in November, 1925, is untimely, four amendments having been submitted at the November election, 1923: Armstrong v. King, 281 Pa. 207; Hollinger v. King, 282 Pa. 157.

The submission of the proposed amendment in November, 1925, would violate article XVIII, section 1 of the Constitution because the general assembly provided for its submission in November, 1924, with no other provision made for its submission.

*Henry S. Drinker, Jr.,* for Pennsylvania Forestry Association, intervenor.—Article IX of the Constitution does not preclude the submission of different amendments within five years: Heisler v. Colliery Co., 274 Pa. 448; Com. v. King, 278 Pa. 280.

OPINION BY MR. JUSTICE SADLER, June 27, 1925:

· This proceeding is one of mandamus to compel the Secretary of the Commonwealth to advertise a proposed constitutional amendment, which would permit the State to borrow $35,000,000 for certain specified purposes, and the defendant has questioned the right to so proceed in the present year. The Pennsylvania Forestry Association, a party interested in the question involved, presented its views by brief submitted. To the answer filed by the attorney general, a demurrer was interposed, and the learned court below reached the conclusion that the order prayed for could not be made. This appeal followed.

The Constitution may be altered, as provided by article XVIII, section 1. That changes should not be accomplished without due consideration, preliminary action was required at two successive legislatures "but no amendment or amendments shall be submitted oftener than once in five years. When two or more amendments shall be submitted they shall be voted upon separately."

In 1921 (P. L. 1236 and 1238), the legislature adopted two resolutions. In one, it provided for submission of a change in article IX, section 4, so that the debt of the Commonwealth might be increased to the amount of one hundred million dollars for the purpose of improving and rebuilding the highways of the Commonwealth. Later, it again suggested an amendment to the same section, reducing by one-half the total of road bonds, though otherwise the wording is the same, and adding the clause, "provided further, however, that the general assembly, irrespective of any debt, may authorize the State to issue bonds to the amount of thirty-five million of dollars for the payment of compensation to certain persons from this State who served in the army, navy, or marine corps of the United States, during the World War, between the 6th day of April, one thousand nine hundred and seventeen, and the 11th day of November, one

thousand nine hundred and eighteen." It directed that this question should be submitted to the electors on the first Monday of November, 1924, so that they could approve and ratify or reject it. Both of these proposals were again passed in the same form by the legislative body in 1923 (P. L. 1118, 1121). A similar enactment, authorizing the issue of bonds to the amount of $25,000,000 "for the purpose of acquiring land in the State for forests," was adopted in 1923, and again in 1925, and furnishes the reason for the intervention, at argument, on behalf of appellant, which we have before referred to.

The Constitution of the State may be legally amended in the manner specifically set forth therein, or a new one may be put in force by a convention duly assembled, its action being subject to ratification by the people, but these are the only ways in which the fundamental law can be altered. If directed by the legislature, after compliance with the constitutional requirements, it becomes the duty of the secretary of the Commonwealth to advertise, as directed by the 18th section, and if he improperly refuses through the result of a misunderstanding as to his duty, the courts will require by mandamus that this be done (Com. v. Griest, 196 Pa. 396), though it be necessary, because of delay, to hold the election at a time later than that named by the legislature.

There may be technical error in the manner in which a proposed amendment is adopted, or in its advertisement, yet, if followed, unobjected to, by approval of the electors, it becomes a part of the Constitution. Legal complaints to the submission may be made prior to taking the vote, but, if once sanctioned, the amendment is embodied therein, and cannot be attacked, either directly or collaterally, because of any mistake antecedent thereto. Even though it be submitted at an improper time, it is effective for all purposes when accepted by the majority: Armstrong v. King, 281 Pa. 207.

The proposed change by resolution 3a, passed by the legislature in 1921 and 1923, was adopted by the people, no preliminary objection having been made as to the right to present it at the time to the voters, and, therefore, constitutes a legal alteration. In the case of number 2a, however, which had attached thereto the provision for the soldier's bonus, a bill in equity was filed to restrain the advertisement of the proposed submission. The legal questions here involved were then discussed in an opinion filed in this court, and the injunction prayed for was granted. Repetition of the argument then made is needless. Emphasis is given to what is there set forth, by the decision in Hollinger v. King, 282 Pa. 157, where it is said (p. 160), in part: "Our deliberate thoughts on the point at issue are so fully developed in Armstrong v. King, supra, that it would serve no useful purpose to restate them at this time; it is enough to say that the views there expressed are here applied, and the ruling of the court below, that the amendment adopted November 6, 1923, is an unimpeachable part of the Constitution, is sustained. As we said at pages 222-3 of our opinion in the case here referred to, 'The approval of the people gives unattackable validity to......amendments submitted to them.'"

It is now proposed to present the same proposition to the voters in the fall of 1925, and this proceeding is objected to by the Commonwealth on the ground that a valid amendment to the Constitution was made in 1923, and, therefore, under art. XVIII, no further changes can be made until 1928. With this proposition we agree. Some confusion seems to have arisen,—though we see no justification for it,—from the following paragraph appearing in Armstrong v. King, supra (p. 214): "The present Constitution was amended in 1901, 1909, 1911, 1913, 1915, 1918, 1920 and 1923, those of 1911, 1915, 1918 and 1920, being amendments of article I, section 8, relating to municipal indebtedness. It will be noticed that the untimely submissions were in 1911, 1913, 1918

and 1923. Had injunctions been sought at an appropriate time, against their then present submission, doubtless they would have been enjoined. No such action was applied for, however, the people gave their approval to the amendments, and to this day no one has challenged the fact that they are properly a part of the Constitution." Though, as there held, the submission of the amendment in 1923 could have been successfully objected to, yet the approval by the people was a judgment of the electorate, and changed the basic law, and it is from that date we must consider the right to make further alterations. Until five years have elapsed, no additional modifications can be permitted, provided one interested objects in due course. "Provisions of the Constitution to the effect that amendments may be submitted only at certain times, or at certain elections, are mandatory and must be complied with": 12 C. J. 689. The fact that similar resolutions had previously been passed by the general assembly within a five-year period, and approved by the voters, does not justify a judicial approval of this course, and such action will be restrained when properly attacked: Collins v. Kephart, 271 Pa. 428.

It is further suggested that the resolution passed by the legislatures in 1921 and 1923 is defective, in that it provided for the submission to the people of two propositions, viz: the right to increase the bonded indebtedness for road purposes, and also to pay a soldier's bonus, and that, as a result, the electors, in marking their ballots, could not differentiate between the questions presented. There may be merit in the contention made (see 12 C. J. 690, and cf. Hollinger v. King, supra), as also, in the claim that the legislature fixed the time for the vote as November, 1924, which has now become impossible. If deemed necessary, there is ample time to secure the necessary reënactments before the proposed amendment is submitted for consideration to the electors, and thus possible legal difficulties may be

avoided.   However, in view of the decision reached, that no change in the Constitution is permissible, against objection, until 1928, a discussion of the two questions last mentioned is not required.

In reaching the present decision, we are not unmindful of the fact that the voters should be given free opportunity to modify the fundamental law as may seem to them fit, but this must be done in the way they themselves have provided, if stability, in the carrying on of government, is to be preserved.   It is the duty of the courts to follow the rules fixed by the Constitution. If believed to be unwise, in the provisions expressed, it should be rewritten, or modified, but as long as plain words are used, directing what shall be permitted, it is imperative on the courts to restrain any actions which are forbidden.

The assignments of error are overruled, and the judgment is affirmed.