731 A.2d 1261

John G. BERGDOLL, K. Robin Davis, and
Gerald C. Grimaud, Appellees,

v.

Honorable Yvette KANE, Secretary of the Commonwealth
of Pennsylvania and the General Assembly of the Com-
monwealth of Pennsylvania, Intervenor, Appellants.

Pennsylvania Bar Association, Intervenor.

Supreme Court of Pennsylvania.

Argued Nov. 16, 1998.

Decided June 15, 1999.

D. Michael Fisher, Harrisburg, Calvin R. Koons, Senior Deputy Atty. Gen., John G. Knorr, III, Chief Deputy Atty. Gen., for Appellant, Secretary of the Com.

C. Clark Hodgson, Jr., Jonathan F. Bloom, Philadelphia, for Intervenor–General Assembly.

Leonard N. Sosnov, Associate Prof. of Law, Widener Univ., Wilmington, DE, for Bergdoll, Davis and Grimaud, John G. Bergdoll, III, Gerald C. Grimaud, K. Robin Davis, Bergdoll, Davis and Grimaud, pro se.

Clifford A. Rieders, Special Counsel, PA Bar Ass'n, Williamsport, for Intervenor–PA Bar Ass'n.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

ZAPPALA, Justice.

This is a direct appeal filed on behalf of Yvette Kane, Secretary of the Commonwealth, from the order of the Commonwealth Court which granted summary judgment against her in a quo warranto action challenging the placement of a proposed constitutional amendment on the November 7, 1995 ballot. For the following reasons, we affirm.

On October 17, 1995, John G. Bergdoll, K. Robin Davis and Gerald C. Grimaud (Appellees) filed an Application for Leave to File Complaint in Quo Warranto, a Complaint in Quo Warranto, and a Motion for Temporary Restraining Order and Preliminary Injunction against Secretary Kane in this Court. Appellees sought to enjoin the inclusion of a ballot question which would amend the confrontation clause of Article I, § 9 of the Pennsylvania Constitution on the November 1995 ballot. Secretary Kane filed an answer to the application on October 30, 1995 and Appellees' reply was filed the next day. By per curiam order dated November 1, 1995, we transferred the matter to Commonwealth Court for expedited consideration.

The Commonwealth Court scheduled a hearing for November 2, 1995 on the request for a preliminary injunction to

enjoin Secretary Kane from placing the proposed constitutional amendment before the electorate. At the hearing, President Judge Colins considered an application by Appellee, Pennsylvania Bar Association, to intervene as a party-plaintiff, or alternatively as amicus curiae, in the quo warranto action. The application represented that the PBA would also seek to enjoin the inclusion of the disputed ballot question on the ballot. President Judge Colins granted the application and permitted the PBA to intervene as a party-plaintiff in the action.

On November 2, 1995, President Judge Colins also entered an order denying the Appellees' request for a preliminary injunction. In his memorandum opinion dated November 3, 1995, President Judge Colins stated that the request had been denied based solely upon his conclusion that Appellees had failed to show an immediate need for relief and irreparable harm, and that the denial did not preclude ultimate relief on the merits, if necessary, after the election. We affirmed the Commonwealth Court's decision on appeal by Appellees by order dated November 6, 1995.

The ballot question sought to be enjoined by Appellees proposed to amend the confrontation clause of the Pennsylvania Constitution and to amend the Pennsylvania Constitution so as to allow the General Assembly to enact laws regarding the manner by which children may testify in criminal proceedings. The proposed amendments were in response to this Court's decision in *Commonwealth v. Ludwig*, 527 Pa. 472, 594 A.2d 281 (1991).

In *Ludwig*, we addressed the issue of whether the use of closed circuit television to transmit the testimony of an alleged child victim violates the confrontation clauses of the United States Constitution and the Pennsylvania Constitution. We held that the confrontation clause in Article I, § 9 of the Pennsylvania Constitution does not permit such an infringement of a defendant's constitutional right to meet a witness face to face.

Article I, § 9 of the Pennsylvania Constitution provides that

In all criminal prosecutions the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of the accusation against him, to meet the witnesses face to face, to have compulsory process for obtaining witnesses in his favor, and in prosecutions by indictment or information, a speedy public trial by an impartial jury of this vicinage;  he cannot be compelled to give evidence against himself, nor can he be deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land.  The use of a suppressed voluntary admission or voluntary confession to impeach the credibility of a person may be permitted and shall not be construed as compelling a person to give evidence against himself.

We stated that Article I, § 9 "clearly, emphatically and unambiguously requires a 'face to face' confrontation."  We drew on our observations about the nature of the confrontation clause in the case of *Commonwealth v. Russo,* 388 Pa. 462, 131 A.2d 83 (1957):

Many people possess the trait of being loose tongued or willing to say something behind a person's back that they dare not or cannot truthfully say to his face or under oath in a courtroom.  It was probably for this reason, as well as to give the accused the right to cross-examine his accusers and thereby enable the jury to better determine the credibility of the Commonwealth's witnesses and the strength and truth of its case, that this important added protection was given to every person accused of crime.  We have no right to disregard or (unintentionally) erode or distort any provision of the Constitution, especially where, as here, its plain and simple language make its meaning unmistakably clear; indeed, because of the times in which we live we have a higher duty than ever before to zealously protect and safeguard the Constitution.

388 Pa. at 470–471, 131 A.2d at 88.

The resolution of the issue under the Pennsylvania Constitution made it unnecessary to address the federal constitutional claim.  We noted, however, that the confrontation clause of the Sixth Amendment of the U.S. Constitution, which provides

that a defendant in a criminal case "shall enjoy the right . . . to be confronted with the witnesses against him," did not require the "face to face" confrontation mandated by the state constitution. *See Maryland v. Craig*, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990).

On April 26, 1993, the Pennsylvania Senate passed Joint Resolution No. 1 of Session 1993–94 (Senate Bill 218 of 1993) which proposed to amend Article I, § 9. The same resolution was passed by the House of Representatives on June 20, 1994. The proposed amendment was drafted so as to delete the face to face requirement of the confrontation clause of Article I, § 9, and replace the requirement with the language contained in the confrontation clause of the Sixth Amendment of the U.S. Constitution. Furthermore, the proposed amendment included an additional provision that would give the General Assembly the authority to establish by statute the manner of testimony of child victims or child material witnesses in criminal proceedings, including the use of videotaped depositions or testimony by closed-circuit television.[1]

The text of the proposed amendment set forth in Joint Resolution 1994–1 provided that Article I, § 9 be amended to read:

§ 9. Rights of accused in criminal prosecutions.

In all criminal prosecutions the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of the accusation against him to [meet the witnesses face to face] *be confronted with the witnesses against him*, to have compulsory process for obtaining witnesses in his

---

1. This provision was apparently included in response to challenges that had been made to the constitutionality of legislation relating to videotaped depositions and testimony by closed circuit television, which was previously codified at 42 Pa.C.S. §§ 5984–5985. The statutes permitted the Commonwealth to present the testimony of child victims or child material witnesses in prosecutions through the use of videotaped depositions and closed circuit television. Prior to the passage of the joint resolution, this Court had heard argument in *Commonwealth v. Louden*, 536 Pa. 180, 638 A.2d 953 (1994), to address the constitutionality of the statutes. On March 11, 1994, we issued an opinion declaring that §§ 5984 and 5985 on their face were repugnant to Article I, § 9 of the Pennsylvania Constitution.

favor, and, in prosecutions by indictment or information, a speedy public trial by an impartial jury of the vicinage; he cannot be compelled to give evidence against himself, nor can he be deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land. The use of a suppressed voluntary admission or voluntary confession to impeach the credibility of a person may be permitted and shall not be construed as compelling a person to give evidence against himself. *Notwithstanding the provisions of this section, the General Assembly may by statute provide for the manner of testimony of child victims or child material witnesses in criminal proceedings, including the use of videotaped depositions or testimony by closed-circuit television.*

The underlined language was to be added to the Pennsylvania Constitution, while the bracketed language was to be deleted. The joint resolution was subsequently published by the Secretary of the Commonwealth in newspapers throughout the Commonwealth.

On February 14,1995, the Senate passed Joint Resolution No. 1, Special Session of 1995 (Joint Resolution 1995–1), which was passed by the House of Representatives on March 13, 1995. Joint Resolution 1995–1 directed the Secretary of the Commonwealth to submit the proposed amendment to Article I, § 9 to the electorate at the November 7, 1995 election. The Secretary of the Commonwealth published notice and the text of Joint Resolution 1995–1, the ballot question for the proposed amendment, and a statement of the Attorney General in newspapers in August, September and October 1995.

The ballot question presented to the voters in November 1995 read:

Shall the Pennsylvania Constitution be amended to provide (1) that a person accused of a crime has the right to be "confronted with the witnesses against him," instead of the right to "meet the witnesses face to face," and (2) that the General Assembly may enact laws regarding the manner by which children may testify in criminal proceedings, includ-

ing the use of videotaped depositions or testimony by closed-circuit television?

While this matter was pending, the electorate voted in favor of the ballot question on election day.

In their amended complaint, Appellees challenged the ballot question and its passage. They asserted that the ballot question violated Article 11, § 1 of the Pennsylvania Constitution, which establishes the procedure for the proposal of amendments by the General Assembly and their adoption by the electorate. In relevant part, Article 11, § 1 provides that "[w]hen two or more amendments shall be submitted they shall be voted upon separately."

Appellees asserted that the ballot question contravened this requirement because it involved two proposed constitutional amendments, the first part of the question that would amend Article I, § 9, and the second part that would effectively amend Article 5, § 10 (relating to judicial administration).

Pursuant to Article 5, § 10(a), the Supreme Court of Pennsylvania "shall exercise general supervisory and administrative authority over all the courts and justices of the peace. . . ." Article 5, § 10(c) provides:

The Supreme Court shall have the power to prescribe general rules governing practice, procedure and the conduct of all courts, justices of the peace and all officers serving process or enforcing orders, judgments or decrees of any court or justice of the peace, including the power to provide for assignment and reassignment of classes of actions or classes of appeals among the several courts as the needs of justice shall require, and for admission to the bar and to practice law, and the administration of all courts and supervision of all officers of the judicial branch, if such rules are consistent with this Constitution and neither abridge, enlarge nor modify the substantive rights of any litigant, nor affect the right of the General Assembly to determine the jurisdiction of any court or justice of the peace, nor suspend nor alter any statute of limitation or repose. All laws shall

be suspended to the extent that they are inconsistent with rules prescribed under these provisions.

Appellees contended that as the ballot question was submitted to the qualified electors of the Commonwealth, no qualified elector could answer one way on part one (the face to face provision) and another way on part two (the child witness procedure to be determined by the General Assembly provision). Further, Appellees asserted that the ballot question was confusing and did not disclose to the electorate the full meaning of the proposed amendments.

Appellees also challenged the ballot question claiming that the General Assembly and/or the Secretary of the Commonwealth failed to comply with the publication requirements of Article 11, § 1 because (1) each of the two proposed amendments were not published separately; and (2) each of the two proposed amendments were not published before two different general elections. Appellees contended also that the proposed amendment violates the separation of powers guaranteed by the federal and state constitutions. Finally, Appellees asserted that the right of an accused to meet witnesses face to face is fundamental and may not be taken away.

The Secretary of the Commonwealth filed an answer and new matter, asserting that the ballot question contained only one proposed constitutional amendment and that publication of the proposed amendment in newspapers throughout the Commonwealth in August, September and October of 1995 satisfied the requirements of Article 11, § 1. The Secretary also asserted that (1) the amended complaint failed to state a claim upon which relief could be granted, (2) that Appellees were guilty of laches and were not entitled to equitable relief, and (3) that the PBA lacks standing.[2]

After the pleadings were closed, the parties filed cross-motions for judgment on the pleadings, or in the alternative, for summary judgment. The Commonwealth Court, sitting en banc, granted Appellees' motion for summary judgment and

2. The challenge to the PBA's standing was made after the hearing on the PBA's application to intervene was held and President Judge Colins had entered the order granting the application.

denied the Secretary's motion. The court determined that Appellees had standing to challenge the ballot question and declared the vote on the ballot question null and void as it contained two amendments in one question in violation of Article 11, § 1. The court concluded that even though Article 5, § 10(c) was not mentioned, the ballot question was intended to amend the authority given to the Supreme Court pursuant thereto.

The court stated:

By asking the voters of Pennsylvania whether the Constitution should be amended to provide a person accused of a crime the right to be confronted with the witness against him, an amendment to Article I, Section 9 and whether the General Assembly should be afforded the right to enact laws concerning the manner in which children testify in criminal proceedings, a procedural function which is controlled by the Supreme Court in accordance with Article V, Section 10, the ballot question, in contravention of Article XI, Section 1, posed two amendments to the Constitution with a single question.

*Bergdoll, et al. v. Honorable Yvette Kane,* 694 A.2d 1155, 1159 (Pa.Cmwlth.1997).[3]

Secretary Kane filed a direct appeal from the Commonwealth Court's order. On August 21, 1998, we entered a per curiam order directing that oral argument on the issues be scheduled.

Secretary Kane asserts that the Appellees do not have standing to challenge the constitutionality of an amendment to the confrontation clause. Secretary Kane argues that the status of the individuals as attorneys, taxpayers and electors, and of the Pennsylvania Bar Association as an association whose members are attorneys admitted to practice within the Commonwealth of Pennsylvania, does not confer standing upon the Appellees to bring this action. Secretary Kane

---

**3.** Joined by Judge Kelley and Judge Leadbetter, Judge Pellegrini dissented based upon his finding that only one change was made under the proposed amendment. He concluded that the ballot question amended only Article I, § 9.

contends that the Appellees do not have a substantial, direct and immediate interest in the outcome of the litigation because they are not criminal defendants whose right to confront witnesses will be limited by the change in the law. She argues that "[i]f there is a challenge to the constitutionality of the amendment, it would be logically and appropriately raised by a criminal defendant who is affected by it."

Appellees assert that it is not only criminal defendants who have an interest in ensuring that proposed constitutional amendments comply with the dictates of Article 11, § 1 of the Pennsylvania Constitution. As members of the electorate, and as attorneys sworn to defend the Constitution as part of their oath of office, Appellees assert that they have a substantial, direct and immediate interest in the matter. Appellees also contend that Secretary Kane waived the issue of standing as to the individuals named in the action by failing to raise the issue in her pleadings. It is asserted that Secretary Kane did not challenge their standing until her motion for judgment on the pleadings or for summary judgment was filed.

█ Secretary Kane has not responded to Appellees' waiver argument in the briefs that have been filed with this Court. The record supports Appellees' argument that Secretary Kane did not raise the issue of standing as to the named individuals in the pleadings. In her answer and new matter, Secretary Kane claimed only that the PBA lacked standing. It is unclear, however, whether Appellees argued waiver before the Commonwealth Court since the issue of standing of all of the appellees was addressed in its opinion. The Commonwealth Court concluded that Appellees had a substantial, direct and immediate interest in the matter, and had standing. Although we conclude that Secretary Kane did not preserve the issue of standing as to the individual appellees, assuming arguendo that the waiver argument was not raised before the Commonwealth Court, we would agree with the court that the individual appellees and the PBA have standing in this case.

█ "A party seeking judicial resolution of a controversy in this Commonwealth must, as a prerequisite, establish that he

has standing to maintain the action." *Nye v. Erie Insurance Exchange*, 504 Pa. 3, 5, 470 A.2d 98, 100 (1983) (citation omitted). In *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269 (1975), we noted that

> [t]he core concept, of course, is that a person who is not adversely affected in any way by the matter he seeks to challenge is not "aggrieved" thereby and has no standing to obtain a judicial resolution of his challenge. In particular, it is not sufficient for the person claiming to be "aggrieved" to assert the common interest of all citizens in procuring obedience to the law.

464 Pa. at 192, 346 A.2d at 280–281.

■ We observed in *William Penn Parking* that what is necessary to render a person aggrieved is that the party has a substantial, direct and immediate interest in the claim sought to be litigated.

> A 'substantial' interest is an interest in the outcome of the litigation which surpasses the common interest of all citizens in procuring obedience to the law. A 'direct' interest requires a showing that the matter complained of caused harm to the party's interest. An 'immediate' interest involves the nature of the causal connection between the action complained of and the injury to the party challenging it. . . .

*South Whitehall Township Police Service v. South Whitehall Township*, 521 Pa. 82, 86–87, 555 A.2d 793, 795 (1989) (citations omitted).

■ By defining the interest that Appellees seek to protect as a criminal defendant's interest in the confrontation of witnesses at trial, Secretary Kane minimizes what is truly at stake in this action. The interest sought to be protected is the fundamental right to vote. With this perspective, we find no legitimacy to the claim that Appellees do not have a substantial, direct and immediate interest in the litigation.

In *Moore v. Shanahan*, 207 Kan. 645, 486 P.2d 506 (1971), the Supreme Court of Kansas dealt with a similar challenge under the Constitution of Kansas. The plaintiff, a member of the Bar of Kansas, a taxpayer and qualified elector, had

commenced an action against the Secretary of State to enjoin the submission of three proposed amendments to the state constitution. The plaintiff alleged that the proposed amendments violated a provision of the state constitution requiring that "[w]hen more than one amendment shall be submitted at the same time, they shall be so submitted as to enable the electors to vote on each amendment separately; and not more than three propositions to amend shall be submitted at the same election." A challenge to the plaintiff's standing was sustained by the Shawnee District Court, and the ruling was appealed to the Kansas Supreme Court.

The Kansas Supreme Court reversed the district court, holding that the plaintiff had standing to maintain the action. We find the Kansas Supreme Court's articulation of its reasoning to be compelling.

> The right to vote in any election is a personal and individual right, to be exercised in a free and unimpaired manner, in accordance with our Constitution and laws. The right is pervasive of other basic civil and political rights, and is the bed-rock of our free political system. Likewise, it is the right of every elector to vote on amendments to our Constitution in accordance with its provisions. This right is a right, not of force, but of sovereignty. It is every elector's portion of sovereign power to vote on questions submitted. Since the right of suffrage is a fundamental matter, any alleged restriction or infringement of that right strikes at the heart of orderly constitutional government, and must be carefully and meticulously scrutinized.

207 Kan. at 649, 486 P.2d at 511.

Having determined that Appellees have standing to bring this action, we must next address Secretary Kane's argument that the ballot question did not violate Article 11, § 1 of the Pennsylvania Constitution. Secretary Kane contends that the ballot question, though phrased in two parts, was intended only to amend the confrontation clause to permit child witnesses and victims in criminal proceedings to testify out of court. It is claimed that the ballot question did not amend Article 5, § 10(c), even though the ballot question did give the

General Assembly the authority to prescribe rules in such proceedings.

Appellees respond that "[f]or the legislature to constitutionally propose such a shift in power to control matters of procedure with respect to an entire class of witnesses, a change not necessary to effectuate the reduction in confrontation rights for defendants by eliminating the 'face to face' requirement, it is clear that Article XI, Section 1 mandates that the voters be given the right to vote on each of these proposed changes separately." Appellees also assert that, as a practical matter, there was no way that an individual could vote yes as to part one of the ballot question relating to amendment of the language of the confrontation clause, but no as to permitting the General Assembly to enact laws regarding the manner by which children may testify in criminal proceedings.

Secretary Kane's contention that only a single ballot question amending the confrontation clause was contemplated by the proposed constitutional amendment is belied by the ballot question itself and by the statement of the Attorney General regarding Joint Resolution No. 1, which was published as part of the required advertisement of the ballot question. The ballot question addressed two separate proposals: first, to eliminate the face to face requirement of the confrontation clause, and, second, to authorize the General Assembly to enact laws regarding the manner by which children may testify in criminal proceedings.

The published statement of the Attorney General recognized the dual purposes of the ballot question. The statement provided in relevant part:

> If approved, the ballot question would change the Pennsylvania Constitution in two ways. First, it would make the language of the Pennsylvania Constitution regarding the right of the accused to confront witnesses the same as the language of the United States Constitution regarding the right of the accused to confront witnesses. Second, it would give the Pennsylvania Constitution language that expressly

authorizes the General Assembly to enact laws regarding the manner by which children may testify in criminal proceedings, including the use of videotaped depositions or testimony by closed-circuit television.

The ballot question has two purposes. First, it seeks to ensure that the language of the Pennsylvania Constitution gives the accused no greater a right to confront witnesses than the right to confront witnesses given the accused under the United States Constitution, Second, it seeks to ensure that, notwithstanding the constitutional right of the accused to confront witnesses, the General Assembly is authorized by the Pennsylvania Constitution to enact laws regarding the manner by which children may testify in criminal proceedings.

■ We agree with Appellees that the ballot question encompassed amendments to both Article I, § 9 and Article 5, § 10(c), but did not permit the electorate to vote separately upon each of the amendments in violation of Article 11, § 1.

■ "The Constitution of the State may be legally amended in the manner specifically set forth therein, or a new one may be put in force by a convention duly assembled, its action being subject to ratification by the people, but these are the only ways in which the fundamental law can be altered." *Taylor v. King,* 284 Pa. 235, 239, 130 A. 407, 408 (1925). "The Constitution is specific in providing a complete and detailed process for the amendment of that document. . .," which is set forth in Article 11. *Kremer v. Grant,* 529 Pa. 602, 608, 606 A.2d 433, 436 (1992). "Nothing short of a literal compliance with this mandate will suffice." *Id.,* 529 Pa. at 611, 606 A.2d at 438.

■■ We are also unpersuaded by Secretary Kane's alternative argument that the purported grant of rulemaking authority to the General Assembly in the context of children's testimony in criminal proceedings does not amount to an amendment of Article 5, § 10(c) as that section contemplates that the Supreme Court's rulemaking authority may be affected or limited by other parts of the Constitution. Article 5,

§ 10(c) of the Constitution grants the power to the Supreme Court "to prescribe general rules governing practice, procedure and the conduct of all courts...." As we stated in *In Re 42 Pa.C.S. § 1703*, 482 Pa. 522, 534, 394 A.2d 444, 451 (1978), "[t]he Pennsylvania Constitution grants the judiciary—and the judiciary alone—power over rule-making."

In that decision, we rejected the notion that Article 5, § 10(c) allows the General Assembly to exercise concurrent power in the area of rule making.

> The major response to this argument is that there is simply no substantial support for the proposition that the grant of authority in Article V, § 10(c) is anything other than exclusive.

> \* \* \*

> Moreover, the constitutional provisions explicit statement ... that court-made rules will prevail against any statutes that might be inconsistent with them would be incongruous with a scheme in which the legislature exercised concurrent rule-making power. This Court has noted, 'a power does not inhere to the legislature if it has specifically been...entrusted to another co-equal branch of government.'

482 Pa. at 529, 394 A.2d at 448 (citation omitted).

In affirming the order of the Commonwealth Court in this case, we believe it worthwhile to reiterate the observations made earlier in *Taylor v. King*.

> In reaching the present decision, we are not unmindful that the voters should be given free opportunity to modify the fundamental law as may seem to them fit, but this must be done in the way they themselves have provided, if stability, in the carrying on of government, is to be preserved. It is the duty of the courts to follow the rules fixed by the Constitution. If believed to be unwise, in the provisions expressed, it should be rewritten, or modified, but as long as plain words are used, directing what shall be permitted, it is

imperative on the courts to restrain any actions which are forbidden.

284 Pa. at 242, 130 A. at 409–410.

Justice SAYLOR files a Concurring Opinion.

SAYLOR, Justice, concurring.

To the extent that the majority's opinion can be read as endorsing a distinct category of attorney standing, separate from elector standing, I wish to note that I do not subscribe to such concept. Additionally, while I agree that the ballot question at issue is constitutionally infirm, I would reach this conclusion based upon the fact that it proposed two separate, and non-interdependent, changes to Article I, Section 9, in violation of Article XI, Section 1.

It is apparent from a review of the initiative that one principal aim was to confer upon the General Assembly the power to expand the permissible manner for presenting trial testimony of child witnesses in criminal proceedings. As the proposed amendment would accomplish this precise objective "notwithstanding" all other provisions of Article I, Section 9, there was no apparent need to separately alter Section 9's face-to-face clause. More fundamentally, the alteration of the face-to-face provision would affect a broader segment of rights than the category connected with the confrontation of a child witness;[1] therefore, the changes lacked the interdependence necessary to justify their presentation to voters within the framework of a single question. *See generally Clark v. State Canvassing Bd.,* 119 N.M. 12, 888 P.2d 458, 462 (1995)(striking

---

1. The face-to-face clause of Article I, Section 9 of the Pennsylvania Constitution confers greater protection upon a criminal defendant than does the Sixth Amendment's confrontation clause. *Commonwealth v. Ludwig,* 527 Pa. 472, 594 A.2d 281 (1991). For example, the face-to-face clause precludes the introduction at trial of deposition testimony, unless the accused was present at the deposition. *See id.* at 479–80, 594 A.2d at 284–85. No such restriction exists under the federal system. *See, e.g., United States v. Mueller,* 74 F.3d 1152 (11th Cir. 1996); *United States v. Kelly,* 892 F.2d 255 (3d Cir.1989). As another example, the federal confrontation clause, unlike the face-to-face clause, allows for telephonic trial testimony of witnesses who are unavailable due to illness or pregnancy. *See generally United States v. Jacobs,* 97 F.3d 275, 282 (8th Cir.1996)(collecting cases).

a ballot question where two proposed changes related to the same subject, gambling, but the "rational linchpin" of interdependence was missing); *Lee v. State*, 13 Utah 2d 15, 367 P.2d 861, 864 (1962)(striking a two-part amendment because the two provisions, though related, were not dependent upon each other). It is for this reason that I conclude that the constitutional alterations should not have been bundled, but rather, should have been posed separately.