## Shay v. Scott

C.P. of Centre County, no. 05-4048.

*Douglas L. Hearn,* for appellee.
*William G. Tressler,* for appellant.

GRINE, *J.,* March 15, 2006—Presently before this court is appellant's notice of appeal of this court's order of December 6, 2005. After a protection from abuse petition evidentiary hearing held on the same date, this court was satisfied on proof beyond a reasonable doubt that appellee had proven her allegation of abuse against appellant. Accordingly, this court issued a final order of court on or about December 6, 2005 granting appellee's request for a final protection from abuse order.

Pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), this court filed an order requiring counsel for the appellant to submit a concise statement of matters complained of on appeal. Counsel for appellant did so in a timely matter and argues the following on appeal:

"(1) Plaintiff failed to establish that she is a family or household member, sexual or intimate partner, or person who shares biological parenthood with defendant pursuant to 23 Pa.C.S. §6102.

"(2) Plaintiff failed to establish that defendant inflicted 'abuse' as defined in 23 Pa.C.S. §6102(a)(1) because there was no evidence that defendant either attempted to cause or intentionally, knowingly, or recklessly caused any of the proscribed behaviors under that subsection.

"(3) Specifically, plaintiff did not prove by a preponderance of the evidence that defendant inflicted abuse as defined in 23 Pa.C.S. §6102(a)(5) because there was insufficient evidence of conduct by defendant which would place plaintiff in reasonable fear of bodily injury.

"(4) There was no evidence that defendant inflicted abuse as defined in 23 Pa.C.S. §6102(a)(2), (3) or (4)." See concise statement of matters complaint of on appeal, 2/17/06.

In his first matter complained of on appeal, appellant argues, in sum, that appellee did not have standing to seek a protection from abuse order from this court. Appellant alleges that appellee did not have standing to seek a protection from abuse order because plaintiff failed to establish that she is a protected person under the definition of "abuse" provided in the Protection from Abuse Act. See 23 Pa.C.S. §6102.

"Prior to judicial resolution of a dispute, an individual must as a threshold matter show that he has standing to bring the action." *Pittsburgh Palisades Park LLC v. Commonwealth,* 585 Pa. 196, 203, 888 A.2d 655, 659 (2005); citing *Bergdoll v. Kane,* 557 Pa. 72, 731 A.2d 1261 (1999). In other words, a controversy is only worthy of judicial review if the individual initiating the legal action has been aggrieved. *Pittsburgh Palisades LLC v. Commonwealth,* 585 Pa. 196, 203-204, 888 A.2d 655, 659 (2005). (citations omitted) An individual can demonstrate that he has been "aggrieved" if he can establish that he has a substantial, direct, and immediate interest in the outcome of the litigation in order to be deemed to have standing. *Id.* at 205, 888 A.2d at 660.

Under the Protection from Abuse Act, an adult may seek relief under the Act "by filing a petition with the court alleging abuse by the defendant." 23 Pa.C.S. §6106(a). "Abuse" under the Act is defined as the occurrence of one or more specifically defined acts between family or household members, sexual or intimate partners, or persons who share biological parenthood. 23

Pa.C.S. §6102(a). Appellant and appellee were neither family nor household members, nor persons who share biological parenthood; therefore, appellee's basis for relief was that she and appellant were former sexual or intimate partners.

At the protection from abuse order hearing, appellee testified that as a child, she was sexually molested by appellant. (Tr. 12/6/05, p. 4, ¶¶22-24.) From the time she was 7 years old until she was 12 years old, appellant would fondle and touch appellee between her legs, rubbing appellee's genitals. (Tr. 12/6/05, p. 5, ¶¶16-25; p. 6, ¶¶1-15, 22-25; p. 7, ¶¶1-13.) Appellant does not deny molesting appellee when she was a child. As a result of the molestation, appellant was charged and pled guilty to two counts of indecent assault. (Tr. 12/6/05, p. 84, ¶¶2-4.)

At the conclusion of the hearing, defense counsel argued that appellee was a victim, not a sexual or intimate partner of appellant. Because the sexual relations between appellant and appellee were not consensual, appellant would have this court believe that appellee is not entitled to seek protection from the court. An extensive review of Pennsylvania case law reveals that there have been no previous decisions regarding the issue of whether an unwilling partner in a nonconsensual sexual relationship has standing to allege abuse under 23 Pa.C.S. §6102. Here, where appellee was sexually molested for a number of years, from the time she was a child into her adolescence, and is now again being faced with her abuser, this court submits that it could not find a better example or situation for which a plaintiff-victim is entitled to protection under the Protection from Abuse Act. This court finds that where sexual activity has occurred, even be-

tween a molester and his non-consenting victim, this establishes a sexual or intimate partner relationship between the parties sufficient to give the victim standing to seek a protection from abuse order.

Appellant's remaining arguments challenge the sufficiency of the evidence before the court when this court determined that appellant had inflicted abuse upon appellee as defined under the Protection from Abuse Act. At the outset, this court notes, when a claim is presented on appeal that the evidence is not sufficient to support an order of protection from abuse, an appellate court will review the evidence in the light most favorable to the petitioner, granting the petitioner the benefit of all reasonable inferences. *Karch v. Karch,* 885 A.2d 535, 536-37 (Pa. Super. 2005). Also, in reviewing the validity of a protection from abuse order, the appellate court must defer to the lower court's determinations of credibility of witnesses at the hearing. *R.G. v. T.D.,* 448 Pa. Super. 525, 527, 672 A.2d 341, 342 (1996).

As stated above, an adult may seek relief under the Protection from Abuse Act "by filing a petition with the court alleging abuse by the defendant." 23 Pa.C.S. §6106(a). One type of abuse which may be alleged is where a former or current sexual or intimate partner "[k]nowingly engage[es] in a course of conduct or repeatedly commit[s] acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury." 23 Pa.C.S. §6102(a)(5). Placing another in reasonable fear of bodily injury has been interpreted to mean that the victim's fear of bodily injury must simply be reasonable; actual physical contact is not required. *Fonner v. Fonner,* 731 A.2d 160 (Pa. Super. 1999)

(holding that a victim is not required to wait for physical or sexual abuse to occur in order for the Protection from Abuse Act to apply).

In *R.G. v. T.D.,* 448 Pa. Super. 525, 672 A.2d 341 (1996), the Superior Court found abuse where there was testimony that a former boyfriend made repeated unwanted phone calls, sent electronic messages, informed the plaintiff that he suffered from obsessive-compulsive disorder and that the plaintiff was the object of his obsession, that the plaintiff was "very scared" by the increasingly hostile messages, and that she was afraid to walk around campus even in the daylight. See *id.* The defendant also adamantly persisted in continuing to speak with the plaintiff despite her pleas for him to desist. *Id.* at 528, 672 A.2d at 342.

Here, the testimony revealed that after appellant had pled guilty to the two counts of indecent assault, appellant would show up at appellee's different jobs. (Tr. 12/6/05, p. 8, ¶¶13-15; p. 10, ¶¶14-17.) Appellee testified that she believed that appellant knew she was at those locations because he would come into her place of employment and smile at appellee in a similar fashion to the way appellant would smile at her when he would molest her. (Tr. 12/6/05, p. 9, ¶¶9-15.) Appellee stated that it felt like appellant would find out where she worked, and then that would become a place where appellant would frequent. (Tr. 12/6/05, p. 11, ¶¶14-17.)

Appellee's suspicions were seemingly confirmed when appellant showed up at her front door in August of 2004 when appellee was at home alone with her three young children and pregnant with her fourth. Appellee testified that she immediately started shaking and that one of her first thoughts when she saw appellant was the fear that

he would enter her home through her garage door which was not closed. (Tr. 12/6/05, p. 13, ¶¶18-23.) Appellant also made a statement which sent "ripples of fear" through appellee; appellant made the statement that appellee's neighbor was appellant's cousin. Appellee testified that this statement made her feel like appellant was saying that he could show up at her house any time he wanted to. (Tr. 12/6/05, p. 15, ¶¶6-11.) After this incident, appellee stated that she was so scared and upset that she packed her children into her van, took her cell phone, and drove around calling people until she could reach someone she knew. (Tr. 12/6/05, p. 16, ¶¶4-10.) Appellee did this because she was scared and did not feel safe in her own home. For days after this incident, appellee testified that she was upset and looked over her shoulder everywhere she went. (*Id.* at ¶¶22-24.) The day after appellant "visited" appellee's home, appellee's father called appellant and told him not to go near appellee again. (Tr. 12/6/05, p. 55, ¶¶23-24.)

Mr. Fetzer's warning, however, went unheeded. Even more disturbing, appellant showed up at appellee's church in late October 2005. On that particular date, within seconds of exiting her vehicle into the parking lot of her church, appellee was told by others that appellant was present at the function. (Tr. 12/6/05, p. 20, ¶¶14-15.) Appellant, a member of another church, had volunteered to work at the Light the Night function at appellee's church on Halloween knowing that appellee was a member of that particular congregation. Appellant was observed within feet of appellee, staring at her. (Tr. 12/6/05, p. 22, ¶¶23-24; p. 34, ¶¶10-14.) Appellant was approached by members of appellee's church about the situation, which apparently did not faze appellant as he re-

mained at the event despite appellee's obvious discomfort at appellant's presence. Appellee's reaction to appellant's presence and her fear of appellant can best be summarized in appellee's own words:

"I don't even know how to like explain to you what that does when fear grips you and you just feel like you are in this tunnel, and . . . like you're caught in the headlights. You can't—you just shut down, and that is what I did." (Tr. 12/6/05, p. 20, ¶¶10-15.)

In light of their past history, this court has no doubt as to the extent of the fear appellee has of appellant, and this court finds appellee's fear to be reasonable and well placed. This court respectfully remains satisfied on proof beyond a reasonable doubt that appellee has proven her allegation of abuse against appellant. Specifically, this court asks the court to affirm its finding that appellant knowingly engaged in a course of conduct or repeatedly committed acts toward appellee, including following appellee, without proper authority, under circumstances which placed appellee in reasonable fear of bodily injury.