J-S20002-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ESTATE OF: SANDRA C. LESSER, DECEASED | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: LINDA WALTERS | |
| | No. 1295 EDA 2016 |

Appeal from the Order Entered March 15, 2016
In the Court of Common Pleas of Montgomery County
Orphans' Court at No(s): 2012-x3840

BEFORE:   BOWES, J., OTT, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY BOWES, J.:                    **FILED AUGUST 07, 2017**

On appeal, Linda Walters, Esquire, challenges the orphans' court's decision to reduce the amount of attorney's fees paid to her from $45,000 to $10,000 for her role in administering the present estate by surcharging her in the amount of $35,000.  Appellant also raises complaints about two surcharges imposed upon the executrix.  We affirm.

Sandra C. Lesser, a widow, died testate on November 2, 2012.  On November 7, 2012, the Register of Wills of Montgomery County admitted to probate decedent's last will and testament dated October 24, 2012, and it granted letters testamentary to Theresa Buzzone Kehler, who was a close friend of the decedent.  In the will, Appellant was named as the attorney for the estate.  The will made various specific bequests to relatives, individuals,

and three named charities: Hadassah, the Jewish Family Services, and the Pennsylvania Society for the Prevention of Cruelty to Animals. Additionally, decedent stated that certain charities, which she called her cat charities, were to be given $5,000 each. Decedent left her residuary estate to the Sandra C. Lesser Charitable Foundation, which decedent ordered to be created by Ms. Kehler and Appellant and which was to benefit organizations, individuals, and families in need. The estate was worth approximately $1,450,000, and consisted of the decedent's home, various bank accounts, and bonds.

Thereafter, Appellant and Ms. Kehler executed a fee agreement calling for Appellant to receive a flat commission of 3% of the value of the estate for her legal services. Appellant and Ms. Kehler also executed a fee arrangement for Ms. Kehler to receive a flat fee of 6% of the estate assets as payment for serving as the estate's personal representative. Appellant told Ms. Kehler that she was not required to keep time records, and Appellant likewise did not keep contemporaneous accounts to memorialize the legal work that she performed for the estate.

Appellant represented the estate from November 2012, to September 2014, and she received $45,000 in attorney's fees by July 3, 2013. In September 2014, due to her concern that matters were not being completed, Ms. Kehler retained Michael Mills, Esquire, as the estate attorney.

The first and final account for the estate was prepared, and the Commonwealth, as *parens patriae* for the Sandra C. Lesser Charitable Foundation, filed objections. It sought various surcharges against the executrix and a reduction in the amount of attorney's fees paid to Appellant. The orphans' court held hearings on the objections in May and June of 2015. At those proceedings, Appellant reported that she expected to be paid the agreed-upon flat fee of 3% of the gross value of estate and did not keep time records. Appellant substantiated that she answered calls and emails from Ms. Kehler, advertised the estate, and notified the estate beneficiaries of their interests. Appellant presented a compilation of time records that she prepared after-the-fact, when the amount of her attorney's fees were challenged. She maintained that she performed approximately 154 hours of legal work.

Appellant admitted that she had little experience administering estates, and failed to complete either the inheritance tax return or the income tax returns for the decedent and the estate. Those returns were instead prepared by an accountant, who was paid by the estate for those services. In addition, Appellant neither obtained court approval for the sale of the decedent's real estate to an interested party nor did she prepare the estate's first and final account, which Mr. Mills completed.

The following events are also pertinent. In addition to telling Ms. Kehler that she could receive an executrix fee of 6% of the estate assets

without keeping records, which resulted in a surcharge against Ms. Kehler, Appellant advised Ms. Kehler that she could sell the decedent's home to Ms. Kehler's husband, who planned to transfer the home into his name and that of Ms. Kehler. The house was purchased for $5,000 below its appraised value. Then, Appellant allowed the sale to proceed at that price, even though the estate paid for improvements to the home that were not taken into account in the appraisal. After the agreement for sale was reached, Appellant told Ms. Kehler to obtain a real estate agent to perform the transaction and incorrectly informed the executrix that using a real estate agent would prevent a court from determining that Ms. Kehler engaged in self-dealing when she bought the house for less than fair market value. This advice, regarding the real estate sale, resulted in the estate having to pay an unnecessary real estate commission, and the imposition of surcharges on Ms. Kehler. Without obtaining an estimate from a cleaning service, Appellant informed Ms. Kehler that she could charge a flat fee of $10,000 for cleaning the decedent's home. The orphans' court determined that $5,000 was an appropriate payment for cleaning the house and surcharged Ms. Kehler for the other $5,000.

In addition, Appellant permitted the executrix to donate $5,000 to a charity not listed in the will. As noted, the will left $5,000 to certain charities that Ms. Lesser called her cat charities. The will further delineated that the list of cat charities could be found in a folder on her dining room

table. The folder was never recovered, and, without ascertaining whether it was a cat charity of the decedent and without court approval, Appellant advised Ms. Kehler to donate $5,000 to the Montgomery County Society for the Prevention of Cruelty to Animals. The executrix was surcharged for that payment.

After conducting the hearings, the orphans' court found Appellant's $45,000 fee to be patently unreasonable in light of the work she performed and the incorrect advice that she had disseminated to the executrix. It reduced her attorney's fees to $10,000, and ordered Appellant to return $35,000 to the estate. Appellant filed exceptions wherein she objected to the surcharges imposed upon Ms. Kehler, but did not contest the reduction in her attorney's fee. An *en banc* panel of the orphans' court upheld the initial orphans' court's decision in an order dated March 15, 2016.

Appellant filed a timely notice of appeal on April 14, 2016. She raises the following issues for our review:

> I. Did the orphans' court commit reversible error when it surcharged the attorney's fee of Linda Walters, Esquire, in the amount of $35,000.00, reducing said fee from $45,000.00 to $10,000.00?
>
> II. Did the orphans' court commit reversible error when it surcharged executrix, Theresa Buzzone Kehler, $5,000.00 of the $10,000.00 which was paid for the purpose of cleaning out the decedent's home, located at 845 Valley Green Drive?
>
> III. Did the orphans' court commit reversible error when it surcharged executrix, Theresa Buzzone Kehler, in the amount of $5,000.00 for her distribution to the Montgomery County SPCA

in accordance with the decedent's will, which specified that the aforementioned funds be delivered to "cat charities?"

Appellant's brief at 4 (unnecessary capitalization omitted).

Appellant's first issue involves the orphans' court reduction of her attorney's fees. The Commonwealth maintains that Appellant waived this issue because she failed to preserve it by including it in her exceptions. The Pennsylvania Orphans' Court Rules govern the filing of exceptions. When the present matter was litigated, the following orphans' court rule applied:

> (a) General Rule.... [N]o later than twenty (20) days after entry of an order, decree or adjudication, a party **may** file exceptions to any order, decree or adjudication which would become a final appealable order under Pa.R.A.P. 341(b) or Pa.R.A.P. 342 following disposition of the exceptions. . . . **Failure to file exceptions shall not result in waiver if the grounds for appeal are otherwise properly preserved.**

Pa.O.C.R. 7.1(a) (repealed) (emphases added).[1]

The Pennsylvania Supreme Court has long held that "[i]ssue preservation is foundational to proper appellate review." *In the Interest of F.C. III*, 2 A.3d 1201, 1211 (Pa. 2010). Any issues raised on appeal must have been addressed at the trial court level in order to ensure the trial court

---

[1] The new rule pertaining to exceptions in orphans' court proceedings, Pa.O.C.R. 8.1, did not take effect until September 1, 2016, after completion of the final adjudication and filing of this timely appeal. That rule states: "Except as provided in Rule 8.2 [relating to motions for reconsideration], no exceptions or post-trial motions may be filed to any order or decree of the court." Pa.O.C.R. 8.1.

had an opportunity to consider the claim. *In re Estate of Smaling*, 80 A.3d 485, 491 (Pa.Super. 2013) (*en banc*). This principle permits a trial court to "correct errors as early as possible, advances the efficient use of judicial resources, and implicates concepts of fairness and expense." *F.C. III*, *supra* at 1212.

We interpreted Pa.O.C.R. 7.1 in *Smaling*, *supra*. Therein, the proposed probate of a will was challenged as procured by undue influence and that the decedent lacked testamentary capacity when it was executed. At an orphans' court's hearing, both the proponent and challenger of the will presented countervailing proof on the issues in question. The orphans' court determined that the will was invalid on both grounds; the will proponent did not file exceptions, directly appealing to this Court. Reversing a panel decision to the contrary, the *en banc* *Smaling* Court found that both challenges to the will were preserved despite the fact that no exceptions were filed. We noted that the orphans' court had the opportunity to rule on the weight claims raised on appeal when it considered the evidence presented to it and then rendered its determination as to the will's validity. Thus, the allegations in question were "otherwise properly preserved" by the presentation of evidence by the will proponent.

In the instant case, Appellant challenges the orphans' court's decision to reduce her fees. This issue was thoroughly examined and ruled upon by the orphans' court after hearings where Appellant presented testimony in

support of her position that she was entitled to retain the $45,000 that she was paid. The *en banc* orphans' court adopted, as its Pa.R.A.P 1925(a) opinion, the initial decision rendered by the hearing court, which addressed all of the issues Appellant now raises on appeal. Under former Pa.O.C.R. 7.1, Appellant was not required to raise her issues in exceptions, and she does not raise any new issues not addressed by the orphans' court. We therefore find, under the reasoning employed in **Smaling**, that Appellant's first issue was properly preserved by presentation of evidence on the subject matter.

We now address Appellant's challenge to the orphans' court's decision to order her to reimburse $35,000 of the $45,000 that she received in attorney's fees from the estate. Our standard of review in this matter is as follows:

> When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion. However, we are not constrained to give the same deference to any resulting legal conclusions. The Orphans' Court decision will not be reversed unless there has been an abuse of discretion or a fundamental error in applying the correct principles of law.

*In re Fiedler*, 132 A.3d 1010, 1018 (Pa.Super. 2016) (citations and quotation marks omitted).

In *In re Estate of Rees*, 625 A.2d 1203, 1206 (Pa.Super. 1993), we observed: "The determination of the reasonableness of a fiduciary's compensation is left to the sound discretion of the Orphans' Court." The amount of attorney's fees that can be charged to an estate "are based on the reasonable value of the service actually rendered." *Id*. at 1206. Attorneys "seeking compensation from an estate have the burden of establishing facts which show the reasonableness of their fees and entitlement to the compensation claimed." *Id*. The orphans' court is authorized "to reduce to a 'reasonable and just' level those fees and commissions claimed by the fiduciary and their counsel." *Id*. We will not overturn an orphans' court's decision to disallow attorney's fees "absent a clear error or an abuse of discretion[.]" *Id*.

Appellant appears to have based her fee at least partially on the schedule outlined by *Johnson's Estate*, 4 Fid.Rep.2d 6 (Del. Co. 1983), which calculates attorney's fees upon a percentage of the assets under administration.[2] The schedule in question was reproduced in *In re Estate of Preston*, 560 A.2d 160, 163 (Pa.Super. 1989):

---

[2] In *In re Johnson's Estate*, the orphans' court indicated that the schedule was approved by the Attorney General as the fees to be charged by attorneys for probating estates. *See* 19A West's Pa. Prac., Probate & Estate Administration § 38:1, comment 1. However, "the Attorney General's Office subsequently indicated that it has no such guidelines." *Id.* (citing *In re Nix Estate*, 8 Fiduc. Rep. 2d 179 (Pa. C.P. 1988)).

|  | Per col. | Per total | |
|---|---|---|---|
| $ 00.01 to $ 25,000.00 | 7% | 1,750.00 | 1,750.00 |
| $ 25,000.01 to $ 50,000.00 | 6% | 1,500.00 | 3,250.00 |
| $ 50,000.01 to $ 100,000.00 | 5% | 2,500.00 | 5,750.00 |
| $ 100,000.01 to $ 200,000.00 | 4% | 4,000.00 | 9,750.00 |
| $ 200,000.01 to $1,000,000.00 | 3% | 24,000.00 | 33,750.00 |
| $1,000,000.01 to $,2,000,000.00 | 2% | 20,000.00 | 53,750.00 |

In **Preston**, we ruled that a percentage fee structure cannot be used to justify attorney's fees that would otherwise be considered unreasonable. This Court stated that, while "as a matter of convenience the compensation of a fiduciary may be arrived at by way of percentage, the true test is always what the services were actually worth and to award a fair and just compensation therefor[.]" **Id**. at 165 n.11.

Our Supreme Court has outlined the factors to be considered when a trial court determines an attorney's fees:

> the amount of work performed; the character of the services rendered; the difficulty of the problems involved; the importance of the litigation; the amount of money or value of the property in question; the degree of responsibility incurred; whether the fund involved was 'created' by the attorney; the professional skill and standing of the attorney in his profession; the results he was able to obtain; the ability of the client to pay a reasonable fee for the services rendered; and, very importantly, the amount of money or the value of the property in question.

**In re LaRocca's Trust Estate**, 246 A.2d 337, 339 (Pa. 1968). Importantly, an estate counsel must "exercise the required degree of skill, knowledge and diligence, and [where an attorney's] negligence results in

- 10 -

loss or waste to the estate, the court may impose a surcharge by way of awarding reduced compensation or no compensation at all." ***In re Estate of Westin***, 874 A.2d 139, 147 (Pa.Super. 2005) (citation omitted).

After review of the briefs, record, and applicable law, we conclude that the orphans' court did not abuse its discretion in concluding that $10,000 was the reasonable value of the services actually rendered by Appellant. Appellant was inexperienced in the handling of estates, and she failed to perform the ordinary estate administration services, including the preparation of the estate inheritance and income tax returns, the decedent's final income tax return, and the first and final account.

Appellant also repeatedly failed to properly counsel the executrix on the proper administration of the estate, resulting in the imposition of numerous surcharges on Ms. Kehler. Appellant incorrectly advised the executrix not to keep contemporaneous time records of her activities. Appellant allowed the executrix to engage in self-dealing when she purchased estate property for less than its actual market value. Then, Appellant improperly directed Ms. Kehler to sell the property with the use of a real estate agent, which only incurred more estate expenses and did not, contrary to Appellant's perception, cure any problem associated with a below-fair-market sale of estate assets to Ms. Kehler's husband. Finally, Appellant advised the executrix, without court permission, to donate part of the estate to a charity not listed in decedent's will.

It was within the orphans' court's discretion to assess the credibility and weight that should be afforded Appellant's testimony that she spent 154 hours on estate matters, and it was not required to accept her time record compiled *ex post facto*. Further, it was within the sound discretion of the orphans' court to balance the factors for determining attorney's fees. The record supports the orphans' court's decision, and we therefore affirm its decision reducing Appellant's fees from $45,000 to $10,000.

As to Appellant's second and third issues, we agree with the Commonwealth that Appellant lacks standing to challenge the surcharges imposed upon the executrix. Our Supreme Court has stated:

> A party seeking judicial resolution of a controversy in this Commonwealth must, as a prerequisite, establish that he has standing to maintain the action." **Bergdoll v. Kane**, 731 A.2d 1261, 1268 (Pa. 1999) (citation omitted). Our Commonwealth's standing doctrine is not a senseless restriction on the utilization of judicial resources; rather, it is a prudential, judicially-created tool meant to winnow out those matters in which the litigants have no direct interest in pursuing the matter. Such a requirement is critical because only when "parties have sufficient interest in a matter [is it] ensured that there is a legitimate controversy before the court." **In re T.J.**, 739 A.2d 478, 481 (Pa. 1999).

**In re Hickson**, 821 A.2d 1238, 1243 (Pa. 2003). For a litigant to have the requisite standing to maintain an action, she must have been aggrieved by the matter or ruling that she seeks to challenge. **Rellick-Smith v. Rellick**, 147 A.3d 897 (Pa.Super. 2016) (citing **Office of Governor v. Donahue**, 98

- 12 -

A.3d 1223, 1229 (Pa. 2014)).  A party's interest must be substantial, direct, and immediate.  ***Donahue***, ***supra*** at 1229.

In the instant case, Appellant's second and third issues both address surcharges imposed upon Ms. Kehler.  Appellant no longer represents the estate, and, concomitantly, she does not represent the executrix, who is not a named appellant.  Appellant is not required to pay the estate the surcharges imposed upon the executrix, and cannot be considered aggrieved by the rulings rendered on those issues.  Hence, Appellant lacks standing to challenge any surcharges imposed upon Ms. Kehler, and she cannot litigate the second and third issues raised on appeal.

In conclusion, we find that the orphans' court did not abuse its discretion in surcharging Appellant in the amount of $35,000, and that Appellant does not have standing to challenge the court's rulings with respect to surcharges imposed upon the executrix.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/7/2017