J. A24041/18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ANDREW JOHN KELLY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| REPSOL OIL & GAS USA, LLC, | : | |
| AS SUCC. BY CONVERSION TO | : | |
| TALISMAN ENERGY USA, INC. | : | |
| AND NICHOLAS HALKIAS | : | |
| | : | |
| v. | : | |
| | : | |
| PAUL A. KELLY, INDIVIDUALLY AND AS | : | |
| AGENT FOR ANDREW JOHN KELLY | : | No. 37 MDA 2018 |
| | : | |
| APPEAL OF:  ANDREW JOHN KELLY | : | |

Appeal from the Judgment Entered February 7, 2017,
in the Court of Common Pleas of Susquehanna County
Civil Division at No. 2013-584

| | | |
|---|---|---|
| ANDREW JOHN KELLY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| REPSOL OIL & GAS USA, LLC, | : | |
| AS SUCC. BY CONVERSION TO | : | |
| TALISMAN ENERGY USA, INC. | : | |
| AND NICHOLAS HALKIAS | : | |
| | : | |
| v. | : | |
| | : | |
| PAUL A. KELLY, INDIVIDUALLY AND AS | : | |
| AGENT FOR ANDREW JOHN KELLY | : | No. 38 MDA 2018 |
| | : | |
| APPEAL OF: PAUL A. KELLY | : | |

Appeal from the Judgment Entered February 7, 2017,
In the Court of Common Pleas of Susquehanna County
Civil Division at No. 2013-584 CP

J. A24041/18

BEFORE:  OTT, J., McLAUGHLIN, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:                    **FILED: MAY 1, 2019**

Andrew John Kelly and Paul A. Kelly,[1] individually and as agent for Andrew John Kelly (collectively, "appellants"), appeal the February 7, 2018 judgment[2] that resulted from the June 12, 2017 order of the Court of Common Pleas of Susquehanna County that (1) entered judgment in favor of Paul Kelly, individually and as agent for Andrew Kelly, and Andrew Kelly against Nicholas Halkias with respect to Count I of the Interpleader Complaint, Void Assignment – Failure of Consideration; (2) entered judgment in favor of Nicholas Halkias and against appellants with respect to Count II – Void Assignment – Violation of Fiduciary Duty/Fraud/Self-Dealing, Count III – Void Assignment – Improper Notarization, Count IV – Void Assignment – Vagueness/Assignment Personal to Grantors, and Count V – Misappropriation of Royalties; and (3) with respect to Andrew Kelly's complaint against Repsol Oil & Gas USA, LLC ("Repsol"), as successor by conversion to Talisman Energy USA, Inc. ("Talisman"), judgment was entered in favor of Repsol and

---

[1] Paul Kelly is the father of Andrew Kelly.

[2] The captions originally stated that appellants appealed from an order entered December 6, 2017.  However, in the December 6, 2017 order, the trial court denied post-trial motions.  Appellants are actually appealing the February 7, 2018 judgment.  The captions have been amended accordingly.

- 2 -

against Andrew Kelly as to Count I, Conversion, and Count II, Defamation of Title.  After careful review, we affirm.

The trial court also declared void the assignment executed on June 24, 2007, by James P. Halkias and Kerry Halkias, recorded at Instrument No. 200817634 in the Office of the Register of Wills and Recorder of Deeds for Susquehanna County; and the Recorder of Deeds was ordered to strike the document from the records of Susquehanna County.  Similarly, the assignment executed on June 24, 2007 by James Halkias and Kerry Halkias, recorded at Instrument Number 201309151 in the Office of the Register of Wills and the Recorder of Deeds for Susquehanna County was declared void, and the Recorder of Deeds for Susquehanna County was ordered to strike the document from the records of Susquehanna County.

Andrew Kelly was ordered to disgorge any and all royalty payments, made pursuant to either assignment to Nicholas Halkias.  Repsol was ordered to furnish any and all royalty payments held in suspense pursuant to this matter to Nicholas Halkias, to cease any and all royalty payments made to Andrew Kelly under either assignment, and to furnish all future royalty payments to Nicholas Halkias.  The trial court also scheduled a hearing for consideration of Respol's petition for counsel fees and costs.[3]

---

[3] The issue of counsel fees is not before this court in either of these appeals. However, appellants appealed the trial court's award of counsel fees at Nos. 420 and 421 MDA 2018.

The facts and procedural history, as gleaned from the extensive trial court opinion, are as follows: On May 8, 2013, Andrew Kelly filed a complaint against Talisman and sought royalty payments for oil and natural gas extracted from a parcel of real estate in Susquehanna County. According to the complaint, James Halkias purchased real estate ("Property") in Susquehanna County in early 2006. On June 24, 2007, James Halkias and his wife, Kerry, executed an oil and gas lease with Fortuna Energy Company ("Fortuna") where Fortuna would pay to extract oil and gas from the property. (Trial court opinion, 6/19/17 at 2.)

According to the complaint, that same day, James Halkias allegedly executed an assignment that would give Andrew Kelly a 15% share of any oil and gas royalties from the property. The typed text of the assignment stated:

> The undersigned, Grantors, do hereby assign
> TO
> Andrew John Kelly, Grantee, his heirs or assigns
> Fifteen percent of any accrued royalties which may become due from any energy company as a result of oil or gas production concerning our lands.
>
> For example: Royalty = $1,000 Kelly receives = $150
> Witness our hands and seals this ___ day of May, 2007 intending to be legally bound.

*Id.* at 2-3. The assignment contained handwritten portions that included the names "James P. Halkias & Kerry Halkias (w)" written above the identification of the grantors. To the right side of the page is the notation: "Halkias 431.24." (*Id.* at 2 n.2.) At some point, either Fortuna or its

successor, Talisman, voided the lease and it is not the subject of this litigation. (***Id.*** at 3.)

On August 7, 2008, James Halkias entered into a second oil and gas lease with Alta Resources, LLC ("Alta"). At some point, Alta came under the control of Talisman. On September 22, 2010, James Halkias executed a fee simple warranty deed and deeded the property to his father, Nicholas Halkias. (***Id.***)

Late in 2012, Talisman paid 15% of royalties to Andrew Kelly in accordance with the assignment. In February 2013, Talisman received notice that the Halkias family questioned the validity of the assignment. Talisman then placed all future royalty payments in suspense. Because of this action, Andrew Kelly filed the complaint on May 8, 2013, and pled causes of action for conversion and defamation of title. (***Id.***)

On August 12, 2013, Talisman filed a petition for interpleader and asserted that it did not intend to keep the royalty payments but placed the funds in suspense until the trial court determined who was entitled to the royalties. On October 28, 2013, the trial court granted Talisman's interpleader complaint and ordered Nicholas Halkias to file a complaint. On December 23, 2013, Nicholas Halkias filed an interpleader complaint against appellants. In the interpleader complaint, Nicholas Halkias alleged that the assignment was invalid for various reasons, including contract law, tort, and misappropriation of royalties. Nicholas Halkias asked the trial court to strike the assignment

from the Office of the Register of Wills and the Recorder of Deeds of Susquehanna County and that royalties that had been paid to Andrew Kelly be paid to Nicholas Halkias. Each appellant filed answers with new matter. (***Id.*** at 3-4.)

The trial court conducted a non-jury trial on January 18-19, 2017. Andrew Kelly testified that he had seen the assignment before and that handwriting on the document, which read "Halkias 431.24," referred to the Property. Andrew Kelly further testified that even though he was listed as the grantee on the assignment and James Halkias was the grantor, Andrew Kelly had never met either Halkias. Andrew Kelly recognized the handwriting on the assignment as that of his father, Paul Kelly. Andrew Kelly also testified that he was to receive the royalties for estate planning purposes and the payments were Paul Kelly's fees for legal work for James Halkias. (***Id.*** at 8-9.)

Paul Kelly testified that James Halkias hired him, when Paul Kelly was a practicing attorney,[4] to quiet title on two pieces of property that James Halkias and a friend had purchased at a tax sale. Paul Kelly also testified that James Halkias asked Paul Kelly to assist James Halkias in getting an oil and gas lease for the property and that the assignment was Paul Kelly's fee for doing the work on the oil and gas lease. Paul Kelly testified that he drafted the assignment at the direction of James Halkias even though Paul Kelly had

---

[4] Paul Kelly was later suspended from the practice of law.

no documentary evidence of the instructions. Paul Kelly also testified that the phrase "our lands" in the assignment referred to the Property. Paul Kelly testified that James Halkias was aware that the fee was 15% of any royalties for securing an oil and gas lease and that James Halkias agreed to it. Paul Kelly further testified that the handwriting on the assignment was already present at the time James Halkias executed it. (*Id.* at 9-12.)

James Halkias testified that he and a friend purchased the property at a tax sale in 2005, but that his father, Nicholas Halkias, actually paid the purchase price. James Halkias hired Paul Kelly to quiet title to the Property and paid him approximately $5,000. While the quiet title action was pending, Paul Kelly telephoned James Halkias on July 24, 2007. When they met, Paul Kelly presented James Halkias with an oil and gas lease and the assignment in a packet of documents. According, to James Halkias, Paul Kelly told him that if James Halkias signed the documents, James Halkias would receive $43,000 from an energy company even though the energy companies never drilled when these types of leases were signed. James Halkias testified that the assignment did not have any handwriting on it at the time James Halkias signed it. James Halkias believed that Paul Kelly was representing him in the quiet title action and not concerning an oil and gas lease. James Halkias never received the promised money from the energy company. At some point, James Halkias received copies of the documents used to secure the oil and gas lease with Fortuna from Paul Kelly that were

marked void. Included in the packet was a copy of the assignment marked void. On August 7, 2008, James Halkias entered into an oil and gas lease with Alta. James Halkias later deeded the property to his father for $50,000. (**Id.** at 13-15.)

At the close of the trial, appellants moved for compulsory non-suit. The trial court denied the motion. Following trial, the trial court issued the order from which these appeals arise. Appellants moved for post-trial relief. The trial court denied the motion for post-trial relief.

On January 5, 2018, appellants each appealed. By order filed January 19, 2018, the trial court directed Paul Kelly to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The same date, the trial court also directed Andrew Kelly to file a concise statement of errors complained of on appeal. Each appellant complied with the order on February 2, 2018. On February 26, 2018, the trial court issued a statement pursuant to Pa.R.A.P. 1925(a) in which it stated that it had addressed the issues in the June 19, 2017 opinion and order. By **per curiam** order dated January 26, 2018, this court consolidated the appeals **sua sponte**.

Appellants[5] raise the following issues[6] for this court's review:

> [1.] Whether it was reversible error for the trial court to **sua sponte** raise the application of the

---

[5] Although each appellant filed a separate brief, the issues contained in each respective brief are identical.

[6] Appellants have not numbered the issues in the briefs. However, this court will do so.

discovery rule and fraudulent concealment doctrine when those defenses/doctrines were not properly plead [sic] in any of the pleadings of Nicholas Halkias?

[2.] Whether it was reversible error for the trial court to apply the discovery rule and fraudulent concealment doctrines to invalidate the Halkias to Kelly Assignment when those doctrines were not applicable to the facts of this case?

[3.] Whether it was reversible error for the trial court to enter judgment in favor of Nicholas Halkias on all counts except for Count 1 of his Interpleader Complaint when [appellants] properly raised the defense of the statute of limitations in their responsive pleadings and the applicable statutes of limitations bar all of the claims of [Nicholas] Halkias?

[4.] Whether it was reversible error for the trial court to enter judgment in favor of [Nicholas] Halkias when [appellants] properly raised the defense that in Pennsylvania fraud is a personal action and therefore all of Nicholas Halkias's fraud based claims are barred as a matter of law?

[5.] Whether it was reversible error for the trial court to enter judgment in favor of [Nicholas] Halkias when [Nicholas] Halkias lacked standing and the capacity to sue to bring claims that challenged the enforceability of the Halkias to Kelly Assignment?

[6.] Whether it was reversible error for the trial court to enter judgment in favor of [Nicholas] Halkias and determine that the assignment from James Halkias to Andrew John Kelly, which was the subject of the lawsuit below, when James Halkias never attempted to timely revoke/rescind the assignment as is required pursuant to applicable Pennsylvania law?

[7.]    Whether it was reversible error [for] the trial court to enter judgment in favor of Nicholas Halkias when the Halkias to Kelly [A]ssignment was sufficiently specific and met all legal requirements to be enforceable and to be binding upon [James] Halkias, his heirs, successors, and assigns?

[8.]    Whether it was reversible error for the trial court to determine that improper notarization was a basis to invalidate the Halkias to Kelly [A]ssignment when the notarization of the assignment was not required for the assignment to be valid and enforceable and [Nicholas] Halkias did not establish that any improper notarization had occurred and did not have standing to challenge the purported improper notarization?

[9.]    Whether it was reversible error for the trial court to enter judgment in favor of [Nicholas] Halkias when [Nicholas] Halkias failed to state any claim upon which relief could be granted and [appellants] proved their cases as a matter of law such that they were entitled to the relief requested by them?

[10.]   Whether it was reversible error for the trial court to deny [appellants'] Joint Motion for Post Trial Relief when for the reasons stated in the Motion, all of which are incorporated herein by reference, [appellants] were entitled to the relief requested in the Motion as a matter of law?

Andrew Kelly's brief at 7-8.

This court must apply the following standard of review:

Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of the trial judge

> in a non-jury case must be given the same weight and effect on appeal as the verdict of a jury, and the findings will not be disturbed on appeal unless predicated upon errors of law or unsupported by competent evidence in the record. Furthermore, our standard of review demands that we consider the evidence in a light most favorable to the verdict winner.

**Baney v. Eoute**, 784 A.2d 132, 135 (Pa.Super. 2001) (citation omitted).

We will first address appellants' contention that the trial court committed reversible errors of law by failing to enter judgment in their favor because the applicable statute of limitations barred each and every claim and cause of action of Nicholas Halkias. (Andrew Kelly's brief at 25.)[7]

Appellants assert that the original assignment was recorded in 2008, and therefore James Halkias and then Nicholas Halkias were on notice of the terms of the assignment from no later than the recording of the assignment forward as a matter of law. Appellants assert that first James Halkias and then Nicholas Halkias were on constructive notice that their property was subject to the assignment. Appellants argue that the trial court erroneously relied on the discovery rule and fraudulent concealment doctrine to estop appellants from raising the affirmative defense of the statute of limitations and to hold that the statute of limitations did not begin to run until the end of

---

[7] The sections in the argument section of the briefs of each appellant do not directly correspond to the enumerated issues in the statement of questions involved. As a result, this court has reordered the arguments to reflect more accurately the order presented in the statement of questions involved. Appellants essentially address their first three issues together.

2012 or the beginning of 2013, which contradicted the trial court's December 22, 2016 order and opinion. Appellants further argue that Nicholas Halkias did not properly raise the fraudulent concealment doctrine and the discovery rule in replies to new matters of each appellant. Appellants assert that neither Halkias exercised due diligence to discover that the assignment had been recorded. Further, appellants argue that the trial court's ruling violated the law of the case doctrine as it reversed its earlier ruling.

The trial court addressed these issues in its opinion:

> In Pennsylvania, actions based upon fraud have a two-year statute of limitations, while actions for declaratory relief or actions sounding in contract law have a four-year statute of limitations. 42 Pa.C.S.[A.] §§ 5524-5525. . . . It is the duty of the party asserting a cause of action to use all reasonable diligence to properly inform themselves of the facts and circumstances upon which the right of recovery is based and to institute suit within the prescribed period. **Schaffer v. Larzelere**, 189 A.2d 267, 269 (Pa. 1963). "Thus, the statute of limitations begins to run as soon as the right to institute and maintain a suit arises; lack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations." **Pocono International Raceway, Inc. v. Pocono Produce, Inc.**, 468 A.2d 468, 471 (Pa. 1983). Generally, once the prescribed statutory period has expired, the complaining party is barred from bringing suit. **Colonna v. Rice**, 664 A.2d 979, 980-81 (Pa. Super. 1995) (citing **Hayward v. Medical Center of Beaver County**, 608 A.2d 1040, 1042-43 (Pa. 1992)).
>
> However, the statute of limitations doctrine is not absolute. Two exceptions are germane to this matter: the doctrine of fraudulent concealment and the discovery rule. The doctrine of fraudulent concealment is based on a theory of estoppel, and

provides that the defendant may not invoke the statute of limitations, if through fraud or concealment, he causes the plaintiff to relax his vigilance or deviate from his right of inquiry into the facts. *Fine v. Checcio*, 870 A.2d 850, 860 (Pa. 2005) (citation omitted). Fraudulent concealment does not require fraud in the strictest sense encompassing an intent to deceive, but rather, fraud in the broadest sense, which includes an unintentional deception. "It is clear that a 'defendant's conduct need not rise to fraud or concealment in the strictest sense, that is, with an intent to deceive; unintentional fraud or concealment is sufficient.'" *Krapf v. St. Luke's Hosp.*, 4 A.3d 642, 650 (Pa.Super. 2010) (quoting *Molineux v. Reed*, 532 A.2d 792, 794 (Pa. 1987)). Our Supreme Court has held that a "statute of limitations that is tolled by virtue of fraudulent concealment begins to run when the injured party knows or reasonably should know of his injury and its cause." *Fine*, 870 A.2d at 861.

If through fraud or concealment the defendant causes the plaintiff to relax his or her vigilance or deviate from his or her right of inquiry, the defendant is estopped from invoking the bar of the statute of limitations. *Lange v. Burd*, 800 A.2d 336, 339 (Pa.Super. 2002) (citing *Molineux*, 532 A.2d at 794). For the doctrine of fraudulent concealment to be applicable, "[a] defendant must have committed some affirmative independent act of concealment upon which [a] plaintiff[] justifiably relied." *Krapf*, 4 A.3d at 650 (citing *Lange*, 800 A.2d at 339); *see also Kingston Coal Co. v. Felton Mining Co. Inc.*, 690 A.2d 284, 291 (Pa. Super. 1997). Mere mistake or misunderstanding is insufficient. *Molineux*, 532 A.2d at 794. Also, mere silence in the absence of a duty to speak cannot suffice to prove fraudulent concealment. *Lange*, 800 A.2d at 339 (citing *Sevin v. Kelshaw*, 611 A.2d 1232, 1236 (Pa. Super. 1992); *see also Krapf*, 4 A.3d at 650. The burden of proving such fraud or concealment, by evidence which is clear, precise and convincing, is upon the asserting party. *Lange*, 800 A.2d at 339 (citing *Nesbitt v. Erie Coach Company*, 204 A.2d 473 (Pa. 1964)).

- 13 -

At trial, James Halkias presented testimony regarding alleged concealment of the Assignment by Paul Kelly, which we find credible. Indeed, James Halkias testified that during the execution of the Assignment and the Fortuna lease, Paul Kelly stated he would receive "free money" in the amount of $43,000.00, and that energy companies never drill. Further, James Halkias testified that he simply signed the documents where Paul Kelly, his then counsel-of-record in a pending quiet title action, told him to sign. James Halkias never received the promised "free money" from the energy companies, and instead received "void" copies of the Fortuna lease and Assignment from Paul Kelly. James Halkias testified that upon receiving the "void" documents, he believed the Fortuna lease situation was over, and blocked it out of his mind. Unbeknownst to he [sic] and his father, however, Paul Kelly recorded the Assignment. Thereafter, royalties were paid by Talisman to Andrew Kelly pursuant to the Assignment and the Alta lease, despite James Halkias having no dealings with Paul Kelly in regards to the Alta lease. Finally, the discovery of the royalties being paid to Andrew Kelly was not known to the Halkiases until late 2012 or early 2013.

Based upon our review of the testimony presented at trial, we find the doctrine of fraudulent concealment serves to estop [appellants] from invoking the statute of limitations as a bar to Nicholas Halkias'[s] claims. Indeed, credible trial testimony from James Halkias presents an "affirmative independent act of concealment" upon which he and his father justifiably relied. *Krapf*, 4 A.3d at 650 (citing *Lange*, 800 A.2d at 339). Based upon Paul Kelly's statements, James Halkias believed he was entitled to "free money" which he never received, and believed that energy companies never drilled upon lands. Further, James Halkias believed that the Fortuna lease situation [w]as over due to the "void" documents received from Paul Kelly, despite Paul Kelly's recordation of the Assignment.

These are clear affirmative acts by Paul Kelly upon which James Halkias justifiably relied to relax his vigilance into inquiry of any injury, under **Krapf**, **Lange**, **Kingston Coal**, and **Fine**. Indeed, Paul Kelly's actions rise above the "unintentional fraud or concealment" which would invoke the doctrine of fraudulent concealment. **Krapf**, 4 A.3d at 650 (citing **Molineux**, 532 A.2d at 794). It is "clear, precise and convincing" that Paul Kelly committed these acts and that they were relied upon by James Halkias. **Lange**, 800 A.2d at 339 (citing **Nesbitt**, 204 A.2d at 473). Accordingly, we find the doctrine of fraudulent concealment estops [appellants] from invoking the statute of limitations as a bar to Nicholas Halkias'[s] claims.

A second exception to the statute of limitations doctrine is the discovery rule. The discovery rule provides that where the existence of the injury is not known to the complaining party and such knowledge cannot reasonably be ascertained within the prescribed statutory period, the limitations period does not begin to run until the discovery of the injury is reasonably possible. **Schaffer**, 189 A.2d at 270. The discovery rule arises from the inability of the injured party, despite the exercise of reasonable diligence, to know of the injury or its cause. **Pocono International**, 468 A.2d at 471. Its purpose is to exclude the period of time during which the injured party is reasonably unaware that an injury has been sustained so that people in that class have essentially the same rights as those who suffer an immediately ascertainable injury. **Pounds v. Lehman**, 558 A.2d 872, 874 (Pa. Super. 1989). "The standard of reasonable diligence is an objective or external one that is the same for all individuals. It is not a subjective standard." **Colonna**, 664 A.2d at 980-81 (citation omitted). Further, the level of reasonable knowledge required is 1) knowledge that one has been injured; and 2) that his injury has been caused by another party's conduct. **Id.** (citing **Cathcart v. Keene Industrial Insulation**, 471 A.2d 493, 500 (Pa. Super. 1984) (**en banc**)). The failure to make inquiry when information is available is failure to

exercise reasonable diligence as a matter of law. ***Baumgart v. Keene Building Products Corporation***, 633 A.2d 1189, 1193 (Pa.Super. 1993), ***allocatur denied***, 645 A.2d 1311 (Pa. 1994).

At trial, testimony was presented regarding the discovery of the alleged injury sustained by Nicholas Halkias.  James Halkias testified he assists his father with the management of his financial affairs.  He testified he and his father did not discover that funds were missing from royalty payments until late 2012 or early 2013.  He also testified that he believed the Subject Property was not subject to any other document other than the Alta lease, as he had received a voided copy of the Fortuna lease and the Assignment in the mail from Paul Kelly.  We find this testimony credible based upon our impression of James Halkias on the witness stand during trial.  Further, his testimony is supported by the fact that Talisman did not pay royalties to Andrew Kelly until late 2012, as only then did Talisman begin to extract natural gas from the Subject Property.  Also, Talisman stopped the payments in early 2013, when it was notified by the Halkias family that the Assignment by which Andrew Kelly was being paid was being contested.

Based upon the testimony and evidence at trial, we find the statute of limitations on Nicholas Halkias'[s] claims did not begin to run until late 2012 or early 2013, when James Halkias found his father was not receiving all royalties from oil or gas extracted from the Subject Property.  We credit the testimony of James Halkias, who testified he believed the Fortuna lease and the accompanying Assignment were inoperative sometime prior to 2010.  We find the existence of this economic injury was not known to Nicholas Halkias until he began to receive royalty payments, which did not occur until Talisman began to extract natural gas from the Subject Property.  We find Nicholas and James Halkias exercised reasonable diligence in discovering this economic injury under our Commonwealth's case[ ]law, as they had no way of

knowing of any injury unless and until they began to receive royalty payments they could verify.

We note our conclusion on statute of limitations grounds herein, based upon the doctrine of fraudulent concealment and the discovery rule, comports with our December 22, 2016 Opinion and Order, where we addressed statute of limitations in the context of Nicholas Halkias'[s] proposed amendment and James Halkias'[s] proposed joinder to the Interpleader Complaint. In that Opinion, we utilized September 22, 2010 as the latest date the statute of limitations could have begun to run, based on the facts available to us in the pleadings and motions. ***See generally*** December 22, 2016 Opinion and Order (Harlacher Sibum, J.) (Specially Presiding). In that Opinion, we found that based on this date, Nicholas Halkias'[s] Proposed Amendments to the Interpleader Complaint were barred by Pennsylvania case[ ]law and the statute of limitations. We stated, "Most importantly, however, each of the Proposed Amendments is time barred under the statute of limitations by at least two years." Further, we found that James Halkias'[s] proposed joinder to this action was barred, where we stated, 'Were we to permit his joinder, [appellants] would enjoy a complete defense to James Halkias'[s] claims on statute of limitations grounds.' We reiterate that this conclusion was based on our use of September 22, 2010 as the latest date the statute of limitations began to run. Our December 22, 2016 Opinion and Order did not, however, address the statute of limitations in the context of an affirmative defense to Nicholas Halkias'[s] case-in-chief asserted by [appellants], but rather solely in the context of Nicholas Halkias'[s] proposed amendment and James Halkias'[s] proposed joinder to the Interpleader Complaint.

Notwithstanding our December 22, 2016 Opinion and Order, the testimony and evidence presented at trial shows the doctrine of fraudulent concealment serves to estop [appellants] from invoking the statute of limitations as a bar to Nicholas Halkias'[s] claims, and

discovery of the economic injury did not occur until late 2012 or early 2013. In short, our December 22, 2016 Opinion and Order was not based upon the testimony and evidence at trial, but rather upon the pleadings and motions available to us at that time, due to the parties' failure to provide evidence at the November 14, 2016 hearing. By contrast, under our Commonwealth's discovery rule, the trial testimony and evidence establishes a discovery date of the economic injury in late 2012 or early 2013, while the doctrine of fraudulent concealment serves to estop [appellants] from invoking the statute of limitations as a defense to Nicholas Halkias'[s] claims.

Trial court opinion, 6/19/17 at 23-30 (footnote and citations to record omitted).

The trial court clearly and ably explained its reasoning for determining that under the discovery rule, the trial testimony and evidence established a discovery date of economic injury in late 2012 or early 2013 while the doctrine of fraudulent concealment estopped appellants from invoking the statute of limitations as a defense to the claims of Nicholas Halkias.

The trial court opinion did not address at all or, at least in any detail, appellants' claim that the trial court erred when it raised the application of the discovery rule and the fraudulent concealment doctrine when those defenses were not properly pled in any of the pleadings of Nicholas Halkias. Appellants refer to Rule 1032(a) of the Pennsylvania Rules of Civil Procedure which provides that a party waives all defenses and objections which are not presented by preliminary objection, answer, or reply, subject to some objections which are not applicable here. Pa.R.C.P. 1032(a). Appellants argue

that Nicholas Halkias did not properly raise the defenses to the applicability of the statute of limitations such as the fraudulent concealment doctrine and the discovery rule in replies to the new matters of appellants in that no facts were pled to trigger the discovery rule and fraudulent concealment doctrine.

In **Gotwalt v. Dellinger**, 577 A.2d 623 (Pa.Super. 1990), this court stated that Rule 1029(d) of the Pennsylvania Rules of Civil Procedure:

> governs when a party must file a responsive pleading to an averment contained in a new matter or other pleading. Rule 1029(d) provides that averments in a pleading to which no responsive pleading is required shall be deemed to be denied. If a party's new matter does not contain facts supporting an affirmative defense, but rather contains merely conclusions of law, no denial is required because such averments are deemed to be denied. Because such averments are deemed to be denied, they are, therefore, in issue, and no judgment may be entered based upon a party's failure to respond to those averments.

**Gotwalt**, 577 A.2d at 626.

Here, each appellant in new matter merely stated that the action was barred by the applicable statute of limitations. As this was a conclusion of law without facts supporting the affirmative defense, Nicholas Halkias was not required to respond under Pa.R.C.P. 1029(d). Because he did not have to respond, Nicholas Halkias cannot be precluded from presenting evidence at trial regarding the discovery rule and the fraudulent concealment doctrine on the basis that he did not raise those issues in response to each appellant's new matter.

Appellants next contend that the trial court erred when it entered judgment in favor of Nicholas Halkias when appellants properly raised the defense that fraud was a personal action such that Nicholas Halkias's claims based on fraud were barred as a matter of law.

The trial court found that appellants waived this issue because neither appellant raised the issue in preliminary objections. Challenges to a litigant's capacity to sue must be raised either in an answer or in preliminary objections. *In re Estate of Alexander*, 758 A.2d 182, 189 (Pa.Super. 2000).

Here, appellants did not raise the issue of standing in either an answer or preliminary objections, though each appellant raised standing in new matter. Technically, appellants did waive the issue.

Assuming *arguendo* that appellants preserved this issue, this court determines that the trial court did not err or abuse its discretion, when it determined that Nicholas Halkias had standing to bring the fraud-based actions.

> We have stated as a general policy that "[a] party seeking judicial resolution of a controversy in this Commonwealth must, as a prerequisite, establish that he has standing to maintain the action." *Bergdoll v. Kane*, 557 Pa. 72, 731 A.2d 1261, 1268 (1999) (citation omitted). Our Commonwealth's standing doctrine is not a senseless restriction on the utilization of judicial resources; rather, it is a prudential, judicially-created tool meant to winnow out those matters in which the litigants have no direct interest in pursuing the matter. Such a requirement is critical because only when "parties have sufficient interest in a matter [is it] ensure[d] that there is a legitimate

> controversy before the court." ***In re T.J.***, 559 Pa. 118, 739 A.2d 478, 481 (1999).

***In re Hickson***, 821 A.2d 1238, 1243 (Pa. 2003) (footnote omitted).

> In practical terms, we are assured that there is a legitimate controversy if the proponent of a legal action has somehow been "aggrieved" by the matter he seeks to challenge. ***Independent State Store Union v. Pennsylvania Liquor Control Board***, 495 Pa. 145, 432 A.2d 1375 (1981). A litigant can establish that he has been "aggrieved" if he can show that he has a substantial, direct and immediate interest in the outcome of the litigation in order to be deemed to have standing. ***Bergdoll***[, ***supra***].

***Id.*** at 136, 821 A.2d at 1243.

Here, Nicholas Halkias acquired the property from his son, James Halkias. Under the applicable lease, Respol agreed to pay royalties to James Halkias for the extraction of oil and/or gas from the property.

As the trial court stated in its opinion, a covenant to pay royalties runs with the land. ***Nigro v. Don-Mar Corp.***, 85 A.2d 21, 22 (Pa. 1951). In addition, when a grantor, after entering into such a royalty agreement, conveys his interest in the property, the grantee receives the right to receive the royalty unless the grantor expressly reserves such royalty. ***Appeal of Baird***, 6 A.2d 306, 312 (Pa. 1939).

The trial court concluded:

> Applying our Supreme Court's longstanding case[ ]law, as embodied in ***Nigro*** and ***Baird***, Nicholas Halkias took possession of the right to receive royalty payments from the Subject Property upon execution of the deed. The deed shows no express reservation for any oil and gas royalty interest

> from the grantor. Therefore, Nicholas Halkias is entitled to bring suit concerning any royalty payments from the Subject Property not paid to him since that deed was executed, as he would be "aggrieved" by not receiving a royalty payment he would be entitled to as record owner of the Subject Property. Finally, Nicholas Halkias continues to own the Subject Property, as evidenced by Interpleader Defendant's Exhibit 2 and other testimony at trial. In short, the deed from which Nicholas Halkias took ownership of the Subject Property gives him capacity to bring suit for recovery of oil and gas royalties from the Subject Property under our Commonwealth's standing doctrine.

Trial court opinion, 6/19/17 at 22-23 (citation omitted).

Appellants next contend that it was reversible error for the trial court to enter judgment in favor of Nicholas Halkias and determine that the assignment from James Halkias to Andrew Kelly when James Halkias never attempted to revoke the assignment.

However, in making this argument, appellants ignore the credibility determinations of the trial court. The trial court explicitly found James Halkias to be credible and credited his testimony over that of Paul Kelly. In a non-jury trial, the fact-finder is free to believe all, part, or none of the evidence, and this court will not disturb the credibility determinations of the trial court. Assessments of credibility and conflicts of evidence are for the trial court to resolve. ***Gutteridge v. J3 Energy Group, Inc.***, 165 A.3d 908, 916 (Pa.Super. 2017). Because of these credibility determinations, the trial court found that there was no agreement for Paul Kelly to secure an oil and gas lease for James Halkias, and consequently, there was no agreement for

James Halkias to sign the assignment. (Trial court opinion, 6/19/17 at 36.) Because there was no valid assignment, James Halkias did not have to revoke the assignment.

Appellants next contend that it was reversible error for the trial court to enter judgment in favor of Nicholas Halkias when the assignment was sufficiently specific and met all legal requirements to be enforceable and binding upon James Halkias, his heirs, successors, and assigns.

The objective in interpreting instruments relating to oil and gas interests is to determine the intention of the parties. *Syzmanowski v. Brace*, 987 A.2d 717, 720 (Pa.Super. 2009), *appeal denied*, 997 A.2d 1179 (Pa. 2010).

Once again, appellants ignore the credibility determinations of the trial court. Appellants argue that the assignment clearly describes the Property to consist of 431.24 acres. However, the trial court found credible James Halkias's testimony that the handwriting including this designation of the size of the Property was not present on the assignment form when James Halkias signed it. (Trial court opinion, 6/19/17 at 37-38.) The trial court concluded that the handwriting was added after the execution of the assignment. (*Id.* at 39.)

In the alternative, appellants argue that if this court determines that the documents do not sufficiently identify the interest conveyed, there is sufficient parol evidence to establish both the interest conveyed and the lands from which the interest derives because the 431.24-acre parcel was the only

property of its kind owned at the time of the conveyance, and the only property owned by James Halkias individually at any time in Susquehanna County. However, there is nothing on the assignment to indicate that the property was located in Susquehanna County, and the trial court found that James Halkias owned 100 pieces of property, which made a reference to "our lands" in the assignment ambiguous. (Trial court opinion, 6/19/17 at 45.) Once again, appellants ignore the trial court's credibility determinations which led it to conclude that there was no intent to assign royalties from James Halkias to Andrew Kelly.

Appellants next contend that it was reversible error for the trial court to determine that improper notarization was a basis to invalidate the assignment when the notarization of the assignment was not required for the assignment to be valid and enforceable and Nicholas Halkias did not establish that any improper notarization had occurred.[8]

In Count III of his interpleader complaint, Nicholas Halkias asserted that the assignment should be void on grounds of improper notarization. The trial court found that the assignment was the result of fraud. Furthermore, the trial court found that James Halkias credibly testified that no other person was present when he executed the assignment. The trial court found that the assignment was not notarized at the time of execution but after the fact.

---

[8] Appellants also allege that Nicholas Halkias lacked standing. However, we have already determined that Nicholas Halkias did have standing.

In challenging this determination, appellants essentially raise arguments that we have already discounted, such as the standing of Nicholas Halkias, the lack of a timely effort to rescind the assignment, and the running of the statute of limitations. The trial court did not err or abuse its discretion when it ordered that the assignment be struck.

Appellants next contend that the trial court committed reversible error when it entered judgment in favor of Nicholas Halkias when Nicholas Halkias failed to state any claim upon which relief could be granted and appellants proved their cases as a matter of law such that they were entitled to the relief they requested. As we have already determined that the trial court did not err, we need not address this issue.[9]

Judgment affirmed.

Ott, J. joins this Memorandum.

McLaughlin, J. concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/1/2019

---

[9] Appellants waive their last issue, whether it was reversible error for the trial court to deny appellants' joint motion for post-trial relief when appellants do not address the issue in the argument section of their brief. **See Commonwealth v. J.F.**, 800 A.2d 942, 946 n.10 (Pa.Super. 2002).